## PEOPLE v. O'NEILL.

*(Supreme Court, General Term, First Department. January 28, 1889.)*

ROBBERY—EVIDENCE—CORPUS DELICTI.

Defendant was indicted for robbery, the property being a ten-dollar gold piece and a five-dollar bill. The prosecutor traveled from Boston with a companion, who was not produced at the trial, and, reaching New York city, they drank heavily for two days, prosecutor being, when assaulted, grossly intoxicated. The only evidence against defendant was that when a policeman approached the scene of the disturbance he fled. This he explained by saying that he feared he "would get a licking from the policeman." He was almost immediately arrested, and, when searched, none of the money was found on him, and he proved a good character. The prosecutor had not seen the gold piece since leaving Boston, nor the bill for 26 hours before the robbery, but he had felt the former in his pocket several hours previous thereto. He could not identify any one as the party assaulting him, and stated that he had never seen defendant. His account was much confused, and very indefinite. *Held*, that on the evidence a verdict of acquittal should have been directed.

Appeal from court of sessions, New York county.

Indictment against John O'Neill for the robbery of George Phillips. Verdict of guilty, and judgment thereon, and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*John R. Fellows*, Dist. Atty., (*MacKenzie Semple*, of counsel,) for the People. *Charles Steckler*, (*Alfred Steckler*, of counsel,) for appellant.

BRADY, J. The appellant was convicted of robbery in the first degree, and sentenced to 12 years' imprisonment in the state-prison. Upon the trial, and after the people had rested, the court was requested to direct an acquittal, which was declined, and an exception taken. The complainant was George Phillips, a resident of Boston, who came to New York in pursuit of employment in the middle of February of this year. He left Boston at 6 o'clock on Monday night, and arrived on Tuesday morning. He and his fellow-passenger, whoever he was, had, as he said on the trial, a few drinks the first day, by which he means, it is supposed, Tuesday, and he had more on Wednesday. It was on the evening of that day that the robbery is alleged to have taken place. He says, further, that he went to bed on Tuesday night in an uptown hotel, and on Wednesday morning when he got up he started to drink, and kept drinking pretty well all that day; that he was pretty drunk, but could take care of himself if people would let him alone. He was set upon in the evening about 6 o'clock, he says, and a ten-dollar gold piece and a five-dollar bill taken from him by violence. It appears, however, that he had not counted his money, or taken it out, as he said, after coming from Boston, and it appears on his own evidence that the last time he had his eyes on his money was in Boston; that a ten-dollar gold piece, which he said was taken from him, he had not taken out of his pocket since he left Boston, and the last time he saw the five-dollar bill was when he changed a five-dollar bill the day previous. It seems that he had two five-dollar bills, and changed one, and put the other in the inside pocket of his vest. That was about 11 o'clock on Tuesday morning, and about 26 hours before the robbery is alleged to have taken place. He thought that he had possession of the ten-dollar gold piece at the time that he was assaulted, because he felt it occasionally when he put his hand in his pocket, the fob-pocket, where he felt the money and key. It does not appear, however, whether he inserted his hand in the fob-pocket or the other pocket of his pantaloons, but he added to that: "I cannot fix the time when I last felt that gold piece and key. It was in the morning, the early part of the day." He also said, "I never saw the defendant here before,—never before in my life,—not before the following morning;" and the officer who arrived upon the scene of disturbance about the time of its occurrence said that he saw the complainant staggering down Duane street, very much under the influence of liquor, about 7 o'clock in the evening; and it appears that the prisoner was searched, having been almost immediately arrested after the alleged assault and robbery, and 10 or 12 cents only found upon him. He established by competent evidence a good character.

The statement of the complainant is a very much confused one, and forces the conclusion that his recollection of the incidents of his assault were indistinct, and therefore that his testimony was too unreliable without valuable corroboration to justify a conviction. He had not seen, according to his own confession, the gold piece for two days before the alleged robbery, but had felt it on the date of that occurrence, and at the time when, according to his own confession, he was intoxicated, evidently continuing on that morning a dissipation, if not a drunk, of the day previous, and enlarging upon it apparently until, as the officer says, "he was very much under the influence of liquor. It may be said, indeed, that he was grossly intoxicated." He was evidently not in a condition to identify any one of the men by whom he was assaulted. He had not seen the five-dollar bill for about 26 hours prior to the

alleged assault, and the only circumstance having any importance with refer-ence to the guilt of the prisoner in connection with the alleged robbery is that he fled, but he explains that by expressing an apprehension (to use his own language) "that he would get a licking from the policeman." A careful and deliberate examination of the evidence has led to the conclusion that there should have been corroborative evidence as to the possession of the money which the plaintiff said was taken from him, so as to leave no doubt upon that fact, inasmuch as his drunken state justifies many conjectures as to what might have happened in reference to the money during Wednesday and the night previous to its loss or disappearance in many ways, especially as he had a companion, who was not produced for examination upon the trial. The charge against the prisoner is grave, and the punishment severe, as it ought to have been if the offense charged had been established by competent and satisfactory evidence, which can rarely be the case when it is given almost exclusively by a man who, from a continuous spree, was in a superlative state of gross in-toxication at the time of the occurrence detailed. For these reasons it is thought that the motion to direct an acquittal should have been granted, and error was committed in refusing to make that disposition of the indictment.

Judgment reversed, and new trial ordered. All concur.